## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON HOSKINS, on behalf of himself and others similarly situated, | |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| CITY OF NEW YORK, PATRICIA YANG, in her individual capacity; ROSS MACDONALD, in his individual capacity, | |
| Defendants. | |

### INTRODUCTION

Opioid withdrawal is excruciatingly painful and can sometimes be deadly. The symptoms and risks of withdrawal are magnified when opioid-dependent people are forced to withdrawal, without treatment, in a jail or prison setting. Defendants, the City of New York, and its chief medical officers, Patricia Yang and Ross Macdonald, are well aware that untreated and forced opioid withdrawal is agonizing. Defendant Yang has called it torture. Yet Defendants subjected Plaintiff and others to days or weeks of forced opioid withdrawal without any treatment while they were incarcerated at Rikers Island in 2020. Plaintiff, bring this class action lawsuit to redress violations of his and Class Members' rights under the Fourteenth Amendment to the United States Constitution and the Americans with Disabilities Act.

### JURISDICTION AND VENUE

1.      This is a civil rights action arising under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, as well as Title II of the Americans with Disabilities

Act, 42 U.S.C. §§ 12131-12134. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

2.    Venue is proper under 28 U.S.C. § 1391. The events giving rise to the claims occurred in this District.

## PARTIES

3.    Jason Hoskins is a 36-year-old Black man. He was incarcerated at the Rikers Island Jail Complex, in the Bronx, New York City, at all times relevant to this Complaint.

4.    Defendant City of New York is a municipal entity created and authorized under the laws of the State of New York. Defendant City of New York can be sued in its own name. Defendant City of New York administers and controls the Rikers Island Jail Complex.

5.    Ross McDonald is, and was at all times relevant to this Complaint, the chief medical officer for New York City's Correctional Health Services, the City agency that provides medical, mental health, and dental health services to individuals in the NYC jail system. In this role, Defendant MacDonald was a duly appointed and acting officer, servant, employee, and/or agent of Defendant City of New York. At all relevant times, he was acting of his employment and under color of state law.

6.    Patricia Yang is, and was at all times relevant to this Complaint, the senior vice president for New York's City's Correctional Health Services. In this role, Defendant Yang was a duly appointed and acting officer, servant, employee, and/or agent of Defendant City of New York. At all relevant times, she was acting within the scope of her employment and under color of state law.

7.    Upon information and belief, Defendants McDonald and Yang adopted the unlawful policies complained of herein.

## STATEMENT OF FACTS

**I.    Defendants Forced Plaintiff Jason Hoskins to Withdrawal from Opioid Without Any Treatment While he was Incarcerated at Rikers Island**

8.    Mr. Hoskins is a 36-year-old Black man.

9.    He was admitted into the Jail on March 24, 2020.

10.    Upon being admitted into the Jail, Mr. Hoskins was advised by Jail staff that opioid-dependent persons could elect to be placed in the MAT program.

11.    Mr. Hosking asked to be placed in the MAT program.

12.    Jail staff, however, repeatedly told him that he could not enter the MAT program.

13.    During the next three weeks, despite his repeated pleas, Mr. Hoskins was forced to endure traumatic and painful withdrawal, without any treatment.

14.    During the three weeks of forced withdrawal, Mr. Hoskins symptoms included excruciating pain, chills, cold sweats, headaches, and migraines.

15.    Mr. Hoskins also experienced severe weight loss, was bedridden, and had difficulty accomplishing tasks as simple as showering.

16.    During the time he was forced to withdrawal, Jail staff did not give Mr. Hoskins any pain medication or treatment to alleviate the withdrawal symptoms.

17.    After being forced to endure three weeks of painful withdrawal, Defendants finally provided Mr. Hoskins' with treatment after his lawyers lodged a complaint with the New York City Board of Correction.

**II.    Despite Knowing the Risks of Opioid Withdrawal, Defendants Forced Incarcerated Persons to Withdrawal Without _ANY_ Treatment During the First Months of the COVID-19 Pandemic.**

    **a.  Opioid withdrawal is painful and deadly.**

18.    Opioid withdrawal "is a life-threatening condition resulting from opioid dependence."[1]

19.    Being physically dependent on opioids means the body requires a specific dose of opioids in order to prevent opioid withdrawal.

20.    Opioid withdrawal occurs when a person who is dependent on opioids suddenly reduces or stops taking opioids.

21.    Opioid withdrawal symptoms begin around six to 30 hours after non-use and typically last up to one month, but can linger for several months longer.

22.    Abrupt cessation of opioid use can lead to acute withdrawal symptoms, including uncontrolled pain; severe diarrhea, and excessive vomiting, which can lead to dehydration and loss of electrolytes; aspiration, which can lead to infection or tissue damage; and seizures.

23.    Other symptoms associated with opioid withdrawal include, but is not limited to, "runny nose, over-productive tear ducts, excessive yawning, muscle aches, clammy skin, sweating, goosebumps, headaches, restless limbs, dilated pupils, insomnia, fatigue, vomiting, diarrhea, abdominal cramping, and high blood pressure."

---

[1] Mansi Shah & Martin R. Huecker, Opioid Withdrawal, National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK526012/ (last visited March 20, 2023).

24.    Opioid withdrawal is especially dangerous in the jail settings: "There are documented cases of [] deaths occurring during the [opioid] withdrawal process, all in jail settings, that date back to the late 1990s."[2]

25.    Additionally, incarcerated persons who go through opioid withdrawal often experience "psychological distress, suicidal ideation, and suicide attempts."[3]

26.    Upon release, incarcerated persons who did not receive proper treatment while they were incarcerated are more likely to die from overdose.

27.    "In the long term, if inmates do not receive adequate treatment for withdrawal during incarceration, they face an increased risk of relapse, overdose, and death upon release to the community."[4]

28.    "The opioid overdose death rate is 120 times higher for those recently released from incarceration compared to the rest of the adult population."[5]

   **b.  Defendants have long known the dangers of opioid withdrawal.**

29.    Defendants have long understood the risks of opioid withdrawal.

---

[2] Shane Darke, et al., Yes, People Can Die from Opiate Withdrawal, 112 Addiction 199 (2016), https://onlinelibrary.wiley.com/doi/10.1111/add.13512.

[3] U.S. Dep't Justice, *Investigation of The Cumberland County Jail* 6 (Jan. 14, 2021), https://www.justice.gov/opa/press-release/file/1354646 /download.

[4] *Id.* at 7.

[5] Massachusetts Department of Public Health, An Assessment of Fatal and Nonfatal Opioid Overdoses in Massachusetts 2011-2015 (Aug. 2017), https://www.mass.gov/files/documents/2017/08/31/legislative-report-chapter-55-aug-2017.pdf.

30.     In 1989, Rikers Island became the first jail in the country to offer medicated-assisted therapy ("MAT") to opiate-dependent incarcerated persons.[6]

31.     MAT is a comprehensive approach that combines FDA-approved medications (currently methadone, buprenorphine, or naltrexone) with counseling and other behavioral therapies to treat opioid-dependent patients.

32.     MAT has been shown to decrease opioid use, opioid-related overdose deaths, criminal activity, and infectious disease transmission.[7]

33.     MAT also reduces painful withdrawal symptoms in patients.[8]

34.     In 2018, Defendant Yang testified before the New York State Assembly regarding the effectiveness of Rikers Island's MAT Programs.

35.     She testified that opioid dependency is "of particular health concern" in persons newly admitted to Rikers Island, and, as such, "[timely] access to medication while incarcerated *prevents **traumatic** forced opioid withdrawal*."[9]

36.     She also testified that "incarceration has been shown to potentiate overdose risk."[10]

---

[6] Christine Vestal, *At Rikers Island, a Legacy of Medication-Assisted Opioid Treatment* (May 23, 2016), https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2016/05/23/at-rikers-island-a-legacy-of-medication-assisted-opioid-treatment.

[7] Nora D. Volkow, M.D., et al., Medication-Assisted Therapies – Tackling the Opioid Overdose Epidemic., 370 New Eng. J. Med. 2063, 2064 (May 29, 2014), https://www.nejm.org/doi/pdf/10.1056/NEJMp1402780.

[8] *Id.*

[9] Ex. 1 at 2-3 (emphasis added).

[10] *Id.* at 2.

37.     She cited a "[a] 2007 New England Journal of Medicine study [that] found [that] incarcerated patients to be 129 times more likely than the general population to die of an overdose in the two weeks following their release to the community."[11]

38.     She also testified that "several studies have shown that exposure to methadone and buprenorphine while incarcerated has been associated with a 75% decrease in the risk of death during the posit-release period."[12]

39.     Defendant MacDonald is extensively cited in a 2016 PEW Charitable Trusts article, which describes the practice of forcing incarcerated persons to abruptly withdrawal from opiates as "inhumane."[13]

40.     The article found that forced withdrawal without treatment "has resulted in numerous deaths inside prisons and jails."[14]

41.     The article noted that "[a]bstinence from all opioids during confinement has also resulted in thousands of overdose deaths when inmates are released."[15]

42.     Despite knowing the risks of associated with forced opiate withdrawal during incarceration, Defendants nevertheless forced inmates to withdrawal without any treatment during the first months of the COVID-19 pandemic.

     **c.  Defendants forced incarcerated people to withdrawal without <u>any</u> treatment, despite knowledge of its known risks.**

---

[11] *Id.*

[12] *Id.* at 3.

[13] Vestal, *supra* note 6.

[14] *Id.*

[15] *Id.*

43.    For the first months of the COVID-19 Pandemic (beginning on March 18, 2020, and continuing through May 2020), Defendants suspended the MAT program for all persons newly admitted into Rikers Island, including opioid-dependent persons.

44.    During that time, Defendants did not provide ***any*** alternative treatment to newly admitted opioid-dependent persons.

45.    All opioid-dependent persons admitted to Rikers Island between March and May 2020 were therefore forced to endure traumatic and painful withdrawal without any treatment.

46.    At a May 12, 2020 New York City Board of Correction Public Meeting, a criminal defense lawyer complained that because Defendants did not provide any treatment to newly-admitted opioid-dependent persons, "a client reported lying on the floor of an intake pen for two weeks in the agony of detox."

47.    Defendants' decision to not provide any treatment to newly admitted opioid-dependent persons was not necessitated by the COVID-19 pandemic.

48.    Although Defendants stopped treating newly admitted opioid-dependent persons at the beginning of the COVID-19 pandemic, Defendants continued to treat opioid-dependent persons who were in-custody prior to March 18, 2020.

49.    During the relevant period, the jail population was also significantly reduced while the correctional health staff remained at the pre-pandemic level.

## CLASS ACTION ALLEGATIONS

50.    Plaintiff brings this action on behalf of all opioid-dependent persons who were admitted to the Jail and were not provided any treatment to alleviate their withdrawal symptoms.

51.     A class action is a superior means, and the only practicable means, by which Plaintiff and unknown Class Members can challenge Defendant's unlawful detention policy, practice, and/or custom.

52.     This action is brought and may properly be maintained as a class action pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

53.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

## I.     Numerosity (Fed R. Civ. P. 23(a)(1)).

54.     Approximately 43,000 people are admitted to the New York City jails annually, most of these people are detained at Rikers Island (which is home to eight of the City's 11 jails).[16]

55.     About 22 percent of people admitted to Rikers Island are opioid dependent.[17]

56.     Based on these figures, hundreds of opioid dependent people were admitted to Rikers during the relevant time period and were subject to Defendants' unconstitutional and unlawful policy.

57.     Because joinder of hundreds of plaintiffs would be impracticable, the proposed class satisfies the numerosity requirement.

## II.     Commonality (Fed. R. Civ. P. 23(a)(2)).

58.     Plaintiff seeks relief that is common to the class, and common questions of law and fact exist as to the class. Plaintiff seeks relief concerning whether Defendants' policies, practices, and/or customs violate Class Members' rights.

---

[16] Yang Testimony, *supra* note 9, at 2.

[17] *Id.*

59.    Common legal and factual questions arise from one central scheme: Defendants' policy of failing to treat opioid-dependent incarcerated people.

60.    Resolution of common legal and factual issues will determine whether all of the Class Members are entitled to the relief that they seek. Among them are:

      a.    Whether Defendant maintained a policy, practice, and/or custom of refusing to provide any treatment to persons who were withdrawing from opioids; and

      b.    Whether it violates the United Sates Constitution and Americans with Disability Act to force incarcerated persons to withdraw from opioids without any treatment.

## III.    Typicality (Fed. R. Civ. P. 23(a)(3)).

61.    Plaintiff's claim is typical of the claims of the other Class Members. Each Class Member was opioid dependent and was forced to withdrew from opioids without any treatment.

62.    Answering whether Defendants maintained an unlawful policy of forcing opioid-dependent incarcerated persons to withdraw without any treatment will determine the claims of Plaintiff and every Class Member.

63.    A ruling that Defendant's policy, practice and/or custom violated Plaintiff's constitutional rights will benefit every other Class Member.

## IV.    Adequacy (Fed. R. Civ. P. 23(a)(4)).

64.    Plaintiff is an adequate representative of the Class because his interest in the vindication of the legal claim that he raises is entirely aligned with the interest of the other Class Members, each of whom has the same legal claims. Plaintiff is a member of the Class, and there are no known conflicts of interest among the members of the Class, all of whom have an interest in vindicating their constitutional rights.

65.    Plaintiff is represented by undersigned counsel, both of whom have experience litigating complex civil rights matters and class actions in federal court and have extensive knowledge of the details of Defendant's scheme and relevant constitutional law.

66.    The interests of the Class Members will be fairly and adequately protected by Plaintiff and his attorneys.

**V.    Predominance and Superiority (Fed. R. Civ. P. Rule 23(b)(3)).**

67.    Class treatment under Rule 23(b)(3) is appropriate because common questions of law and fact predominate over individual ones and a class action is the only practicable way—and, therefore, the superior way—of resolving this case.

68.    This case turns, for every Class Member, on whether Defendant's policies, practices, and/or customs are lawful.

69.    The common questions of law and fact listed above are dispositive questions in the case of every Class Member, and will predominate over any individual questions.

**CLAIMS FOR RELIEF**

**Claim I**
**Deliberate Indifference to Serious Medical Need**
**Against All Defendants**
**Fourteenth Amendment, 42 U.S.C. § 1983**

70.    Plaintiff realleges and incorporates herein by reference the preceding and any subsequent paragraphs of this Complaint.

71.    Defendants, acting under color of law, enacted and enforced a policy, practice, and/or custom of forcing opioid-dependent incarcerated persons to withdraw from opioids without any treatment.

72.    Defendants' policy, practice, and/or custom of forcing opioid-dependent persons to withdraw from opioids without any treatment constitutes deliberate indifference to serious medical needs and violates the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

73.    As a direct and proximate cause of Defendants' unlawful policy, practice, and/or custom, Plaintiff and Class Members suffered violations of their constitutional rights and are entitled to monetary damages for their injuries.

**Claim II**
**Unlawful Discrimination Against Qualified Individuals with Disabilities**
**Against All Defendants**
**Americans with Disabilities Act, 42 U.S.C. § 12132**

74.    Plaintiff realleges and incorporates herein by reference the preceding and any subsequent paragraphs of this Complaint.

75.    The Americans with Disabilities Act (ADA) and its subsequent amendments prohibit public entities from discriminating against persons with disabilities in their programs, services, and activities. 42 U.S.C. §§ 12131-12134.

76.    Title II of the ADA specifically provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

77.    A "public entity" includes state and local governments, their agencies, and their instrumentalities. 42 U.S.C. § 12131 (1). Defendant City of New York is a public entity within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. 5 35.104. Defendants Yang and MacDonald are employees and authorized representatives of the Defendant City of New York and promulgated the unlawful policy complained of herein.

12

78.    Plaintiff and Class Members, on account of their drug dependency, were disabled within the meaning of the ADA. The term "disability" includes physical and mental impairments that substantially limit one or more major life activities. 42 U.S.C. 5 12102(2). Physical and mental impairments, in turn includes, but is not limited to . . . drug addiction, and alcoholism." 28 C.F.R. § 35.108.

79.    Defendant discriminated against Plaintiff and Class Members on the basis of their disabilities by denying and withholding medically necessary drug treatment, as described throughout this Complaint.

**JURY DEMAND**

80. Plaintiff demands a trial by jury in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jason Hoskins, on behalf of himself and the proposed Class, demands a jury trial for all issues so appropriate and pray that this Court order the following relief:

a.    Certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative for the Class, and appointing his counsel as counsel for the Class;

b.    Enter a judgment compensating the Plaintiff and Class Members for the damages that they suffered as a result of Defendants' unconstitutional and unlawful conduct in an amount to be determined at trial;

c.    Award Plaintiff and Class Members punitive damages against the individual defendants and/or each of them, to be determined according to proof;

d.    Award pre- and post-judgment interest as permitted by law;

13

e.      Enter an order and judgment granting reasonable attorneys' fees and costs

pursuant to 42 U.S.C. §§ 1988, 12205 and 18 U.S.C. § 1964; and

f.      Grant such other and further relief as this Court deems just and proper.


DATED: this 7th Day of April 2023                New York, New York

_____/s/_____                           _____/s/_____

Akeeb Dami Animashaun                       Masai I. Lord
14 Wall Street, Suite 1603                  Lord Law Group
New York, NY 10005                          14 Wall Street, Suite 1603
929.266.3971                                New York, NY 10005
animashaun@pm.me                            718.701.1002
                                            mlord@lordlawgroup.com

14